UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD L. SPARKS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:13-cv-01536-TWP-TAB ) |
| CAROLYN W. COLVIN, Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Richard L. Sparks ("Mr. Sparks") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

### I. BACKGROUND

**A.  Procedural History**

On September 13, 2010, Mr. Sparks filed an application for DIB, alleging a disability onset date of October 1, 2008. At his hearing, Mr. Sparks amended the disability onset date to August 5, 2010. His claim initially was denied on November 13, 2010, and again on reconsideration on February 18, 2011. Mr. Sparks filed a written request for a hearing. On May 10, 2012, a hearing was held before Administrative Law Judge James R. Norris (the "ALJ"). Mr. Sparks participated in the hearing and was represented by counsel. On May 30, 2012, the ALJ denied Mr. Sparks's application for DIB. On July 22, 2013, the Appeals Council denied Mr. Sparks's request for review

of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On September 24, 2013, Mr. Sparks filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background**

At the time of his alleged disability onset date, Mr. Sparks was 57 years old, and he was almost 59 years old at the time of the ALJ's decision. He is a high school graduate. Mr. Sparks worked for thirty years as a car salesman until 2005. Most recently, he worked as a delivery driver for a fishery through 2010. Because of the low level of earnings from the delivery driver position with the fishery, the ALJ did not consider this latter employment to be a substantial gainful activity. Since giving up his position as a delivery driver for the fishery, Mr. Sparks has not worked.

Mr. Sparks suffers from arthritis, a lipid disorder, atherosclerosis, depression, and diabetes. He was diagnosed with diabetes in 2007 and is able to control his diabetes through diet and medication. He does not require insulin. Mr. Sparks began suffering from depression when his father died in November 2007. To treat his depression, he takes medication, which effectively helps him manage this condition.

On August 5, 2010, Mr. Sparks went to the hospital because he discovered blood in his urine. A CT scan of Mr. Sparks's abdomen revealed an indeterminate lesion midpole of the left kidney, pancolonic diverticulosis, and a punctuated left upper pole renal calculus. Dr. Stephen Hardin ("Dr. Hardin") conducted a cystoscopy, which revealed a bladder tumor. Mr. Sparks received Bacillus Calmette-Guerin ("BCG") treatment on August 10, 2010.[1] On August 11, 2010

---

[1] Bacillus Calmette-Guerin (BCG) is used to treat bladder cancer because it stimulates immune responses that can destroy cancer cells within the bladder. When it is used to treat bladder cancer, BCG is given through a urinary catheter (intravesically) into the bladder. *See* http://www.webmd.com/cancer/bladder-cancer/bacillus-calmette-guerin-bcg-for-bladder-cancer.

a renal ultrasound was performed, and it revealed an indeterminant lesion of the left kidney, left bladder wall thickening, and hypoechoic area lateral to the left bladder wall. Mr. Sparks received additional BCG treatments on August 17, August 24, August 31, September 7, and September 14, 2010.

Approximately one month after learning of his bladder cancer, on September 13, 2010, Mr. Sparks filed his application for DIB based on his bladder cancer, diabetes, and depression.

On December 3, 2010, Mr. Sparks met with Dr. Michael Koch ("Dr. Koch"). Dr. Koch explained that the BCG treatments had not been effective. He recommended a cystectomy to remove the bladder. On December 8, 2010, a CT scan was taken of Mr. Sparks's abdomen and pelvis. This scan revealed a soft tissue mass at the left posterior lateral wall of the urinary bladder with adjacent cystic lesion consistent with extension of the bladder cancer into the pelvis.

Mr. Sparks underwent a cystectomy performed by Dr. Koch on December 13, 2010. Mr. Sparks's bladder, prostate, and lymph nodes were removed and a new bladder was created. Mr. Sparks was released to go home on December 17, 2010. Unfortunately, on December 24, 2010, Mr. Sparks returned to an emergency room because he lost his catheter, was incontinent, and was leaking urine.

On January 6, 2011, Mr. Sparks had a post-cystectomy cystogram. Dr. Koch noted that Mr. Sparks was "doing great," and the cystogram revealed no evidence of leakage. Mr. Sparks had follow-up appointments with Dr. Koch and Dr. Hardin throughout the following months. An excretory urogram dated July 29, 2011, revealed bilaterally functioning kidneys without evidence of obstructive uropathy and with good drainage into the neobladder. Mr. Sparks again met with Dr. Koch on April 10, 2012 for a sixteen-month follow-up. Dr. Koch noted that a cystoscopy revealed no obvious disease and no obvious disease recurrence.

As a result of the cystectomy, Mr. Sparks has lost the urge to urinate. He wears Depends or pads, and occasionally, he unknowingly has an accident. This has happened in public. He often leaks urine before realizing the need to void his bladder in a toilet. When he voids his bladder in the toilet, it takes Mr. Sparks about fifteen minutes and about thirty pushes to work through the process. Because of the neuropathy in his feet and the length of time it takes to empty the bladder, he has to sit down for this process. The process leaves Mr. Sparks fatigued, and he generally needs to rest after the process. He must empty his bladder every three to four hours so that the new bladder does not get too full or large or start to leak. Additionally, Mr. Sparks has to catheterize himself.

As part of his daily activities, Mr. Sparks maintains personal hygiene and dresses himself without assistance. He cooks basic meals, shops for groceries and personal items at stores, helps with housework and household chores, mows the lawn with a riding lawnmower, feeds cats, drives and rides in a car, manages his finances, plays a guitar, and watches television. He visits with friends and family and enjoys good relationships.

After Mr. Sparks filed his application for DIB, he underwent a psychological consultative examination with Benjamin Sklar, Ph.D. ("Dr. Sklar"), on October 19, 2010. The results of the examination were consistent with Mr. Sparks's daily activities noted above. He reported to Dr. Sklar that he is able to control his diabetes through diet and medication and that medication effectively helps him manage his depression. Dr. Sklar diagnosed Mr. Sparks with major depression, mild in partial remission, and assigned Mr. Sparks a global assessment of functioning score of 63, which indicates "mild symptoms or mild difficulty in social, occupational, or school functioning."

On November 11, 2010 (before Mr. Sparks had the cystectomy), Dr. Robert Bond, a state agency physician, gave the opinion that Mr. Sparks's impairment was not severe because it was not expected to last longer than twelve months. After the surgery but before many of Mr. Sparks's follow-up appointments, Dr. J.V. Corcoran, also a state agency physician, confirmed Dr. Bond's assessment on February 18, 2011.

On May 5, 2011, Dr. Hardin, Mr. Sparks's primary treating physician, completed a medical assessment form. He gave the opinion that Mr. Sparks could never lift or carry even five pounds and could never engage in simple grasping or fine manipulation with his hands. Dr. Hardin also concluded that Mr. Sparks could never push or pull even ten pounds with his hands, never operate foot controls with his feet, and never perform various postural functional activities. He opined that Mr. Sparks must avoid all environmental functional activities.

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the

claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Mr. Sparks met the insured status requirement of the Act for DIB through December 31, 2014. The ALJ then began the five-step analysis. At step one, the ALJ found that Mr. Sparks has not engaged in substantial gainful activity since August 5, 2010, the alleged onset date of disability. At step two, the ALJ found that Mr. Sparks has the following severe impairments: bladder cancer with cystectomy with neobladder creation, arthritis, and type II diabetes. The ALJ found that Mr. Sparks's depression does not cause more than minimal

7

limitations in his ability to perform basic mental work activities and is therefore not a severe impairment. At step three, the ALJ concluded that Mr. Sparks does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined that Mr. Sparks has an RFC to perform a full range of light work. At step four, the ALJ determined that Mr. Sparks is able to perform his past relevant work as a car salesman because it does not require activities precluded by his RFC of light work. Because the ALJ determined at the fourth step that Mr. Sparks is able to perform his past relevant work, the ALJ did not proceed to step five in the disability analysis. The ALJ denied Mr. Sparks's application for DIB because of the determination that Mr. Sparks is not disabled.

## IV. DISCUSSION

In his request for judicial review, Mr. Sparks asserts that the ALJ did not provide a full and fair hearing, which resulted in prejudice. He also alleges that the ALJ erred in his determination of Mr. Sparks's RFC, leading to an erroneous disability determination.

**A. A full and fair hearing.**

Mr. Sparks complains that he did not receive a full and fair hearing because (1) notice was not provided that Dr. David Owens would testify at the hearing on May 10, 2012, and that his testimony would be given via telephone, (2) the ALJ misidentified Dr. Owens as practicing in internal medicine instead of family medicine, (3) Dr. Owens was dismissed from the hearing "very quickly," and (4) exhibits were not admitted during the administrative hearing.

At the hearing, Mr. Sparks and his attorney had the opportunity to object to Dr. Owens testifying via telephone or testifying at all based on any lack of notice. They also had the opportunity to object to Dr. Owens's qualifications as a "family physician" instead of an

8

"internist." They further had the opportunity to cross-examine Dr. Owens during the hearing about his qualifications, the records he reviewed, and his medical opinions about Mr. Sparks. However, Mr. Sparks and his attorney lodged no objections, and when given the opportunity to cross-examine Dr. Owens, they affirmatively stated they had no questions. This constitutes waiver. *See Young v. Astrue*, 2011 U.S. Dist. LEXIS 85680, at *32–33 (S.D. Ind. Aug. 3, 2011) (by failing to object to or cross-examine the medical expert, the claimant waives these issues).

Mr. Sparks argues that because the ALJ did not enter any exhibits into evidence at the time of the hearing, "there is no way to ascertain whether the records have even made it to the file." ([Filing No. 19 at 13](Filing No. 19 at 13).) However, the ALJ clearly discussed throughout his decision each of the records that were considered, and he attached an index of all record evidence considered. Additionally, Mr. Sparks has not identified any evidence that was ignored or missing from the record. This argument is unavailing for Mr. Sparks.

The Court finds that the ALJ provided a full and fair hearing to Mr. Sparks. There is no reversible error based on this complaint of Mr. Sparks.

**B. The Residual Functional Capacity determination.**

Next, Mr. Sparks argues that the ALJ's determination of Mr. Sparks's RFC was incorrect because the ALJ gave little to no weight to the May 5, 2011, opinion of his primary treating physician, Dr. Hardin. Mr. Sparks also asserts that the ALJ failed to consider all his impairments in combination with the effects of the bladder cancer and surgery when determining the RFC.

In making his RFC determination, the ALJ noted that he was guided by the principles established in Social Security Rulings 96-5p, 96-2p, and 96-8p, and he specifically listed the considerations taken when determining the appropriate weight to give the medical records and testimony.

9

Contrary to Mr. Sparks's argument, the ALJ did consider his other impairments and discussed them in the written decision. The ALJ considered and discussed Mr. Sparks's weight loss, the bladder cancer, the surgery, the effects of the bladder cancer and surgery, what Mr. Sparks had to do to void his bladder, the diabetes, the effects of the diabetes, a knee surgery, knee pain, and arthritis. The ALJ cited evidence of improvement in Mr. Sparks's physical impairments. ([Filing No. 9-2 at ECF pp. 34-35](#)). He noted Mr. Sparks's indications that his diabetes was under control. The ALJ did not discuss Mr. Sparks's depression when considering the RFC because the ALJ already had determined that it was not severe, and it was controlled with medication.

The ALJ also considered the testimony from Mr. Sparks and his wife regarding his daily activities: maintaining personal hygiene and dressing himself without assistance, cooking basic meals, shopping for groceries and personal items at stores, helping with housework and household chores, mowing the lawn with a riding lawnmower, feeding cats, driving and riding in a car, managing his finances, playing a guitar, watching television, and visiting friends and family.

Given the medical evidence from Dr. Koch, Dr. Sklar, and Dr. Owens, and the Sparks' own testimony regarding Mr. Sparks's daily activities, the ALJ gave little weight to Mr. Sparks's testimony regarding the intensity, persistence, and limiting effects of his symptoms when considering the RFC. The ALJ adequately supported his RFC determination with sufficient evidence, and this Court will not reweigh the evidence. *Overman*, 546 F.3d at 462.

Likewise, the ALJ adequately confronted the evidence that did not support his RFC conclusions, and he sufficiently explained why that evidence was discounted. The ALJ explained that Dr. Hardin's assessment was extreme and inconsistent with the other medical and opinion evidence in the record. Dr. Hardin opined that Mr. Sparks could never carry five pounds, push or pull ten pounds, engage in simple grasping or fine manipulation with his hands, operate foot

10

controls with his feet, perform simple postural functional activities, or engage in any environmental functional activities. However, the testimony of both Mr. Sparks and his wife regarding Mr. Sparks's daily activities undermined and contradicted Dr. Hardin's medical opinion. For example, at his hearing, Mr. Sparks testified that he is able to lift up to twenty pounds. ([Filing No. 9-2 at ECF p. 59](#)). Dr. Hardin's opinion that he can never carry even five pounds is not credible or supported by evidence. The ALJ explained that Dr. Hardin's opinion was given little to no weight because it was extreme and inconsistent with the majority of the credible evidence in the record, and Dr. Hardin could have had the desire to help his patient receive benefits when offering his opinion.

The ALJ gave great weight to the opinion evidence of Mr. Sparks's wife that Mr. Sparks functions independently and engages in daily activities with only some limitations because her opinion evidence was consistent with the record as a whole, and she has the opportunity to observe Mr. Sparks function on a daily basis. The ALJ gave little weight to the opinion evidence of Dr. Bond and Dr. Corcoran (which supports the RFC conclusion) because post-review, additional evidence showed that Mr. Sparks was more limited than originally opined by these two doctors.

The ALJ addressed the weight he gave to each of the expert and non-expert opinions and the reasons for his decisions and properly evaluated all of the relevant evidence of the record with respect to Mr. Sparks's impairments. The ALJ's RFC determination was supported by sufficient evidence, and any contrary evidence was adequately considered and addressed.

Having determined that Mr. Sparks has an RFC to do a full range of light work and his past relevant work as a car salesman fits within this category of light work, the ALJ concluded that Mr. Sparks is not disabled because he could return to his past relevant work.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**.

Mr. Sparks's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 3/25/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Annette Lee Rutkowski
LAW OFFICES OF ANNETTE RUTKOWSKI
Anetrutkowski@gmail.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov